# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:12-cv-00185-MR
### [CRIMINAL CASE NO. 1:09-cr-00053-MR-DLH-1]

| | |
|---|---|
| MICHAEL LEE CUTTER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] and the Government's Motion for Summary Judgment [Doc. 17].

## I.    PROCEDURAL BACKGROUND

On June 2, 2009, the Petitioner Michael Lee Cutter was charged in a Bill of Indictment with coercing and enticing via computer an individual he believed to be under 18 years old to engage in sexual activity, in violation of 18 U.S.C. § 2422(b).  [Criminal Case No. 1:09-cr-00053-MR-DLH, Doc. 7: Indictment].  On July 20, 2009, the Petitioner entered into a written plea agreement with the Government, pursuant to which the Petitioner agreed to plead guilty to the charge contained in the Bill of Indictment.  [Id., Doc. 26:

Plea Agreement]. The Petitioner acknowledged in the Plea Agreement that he was subject to a mandatory minimum term of ten years in prison and agreed to waive his right to contest his conviction or sentence on appeal or in a post-conviction proceeding, except on the bases of ineffective assistance of counsel or prosecutorial misconduct. [Id. at 1, 6].

On July 27, 2009, the Honorable Dennis L. Howell, United States Magistrate Judge, conducted the Petitioner's plea colloquy in accordance with Rule 11 of the Federal Rules of Criminal Procedure. During the colloquy, Judge Howell reviewed the elements of the offense to which the Petitioner was pleading guilty, as well as the mandatory minimum sentence of ten years and the maximum sentence of life imprisonment applicable to that offense. [Id., Doc. 46: Rule 11 Transcript at 10, 11]. After the Petitioner affirmed that he understood both the elements of the offense to which he was pleading guilty and the mandatory minimum and maximum penalties he faced, the Petitioner affirmed: that he understood how the Sentencing Guidelines might apply to his offense; that he understood that he would not have the opportunity to withdraw his guilty plea even if he received a sentence greater than the sentence he expected; and that he was, in fact, guilty of the offense to which he was pleading guilty. [Id. at 9-13]. The Petitioner then affirmed that he had reviewed the terms of his plea agreement

2

with his counsel, including the waiver of his right to appeal either his conviction or sentence except on the bases of ineffective assistance of counsel or prosecutorial misconduct, and that he understood each of these terms. [Id. at 17]. As is relevant to the present motion, the Petitioner further affirmed that he had had ample time to discuss any possible defenses with his counsel and that he was satisfied with the services of his attorney. [Id. at 18]. At the conclusion of the colloquy, Judge Howell found the Petitioner's guilty plea to be knowingly and voluntarily entered. [Id. at 9].

Prior to the Petitioner's sentencing hearing, the probation officer submitted a Presentence Report ("PSR"), in which the probation officer calculated a total offense level of 35, which included a three-level reduction for acceptance of responsibility, and a criminal history category of I, resulting in an advisory Sentencing Guidelines range of between 168 and 210 months' imprisonment. [Id., Doc. 33: PSR at 5, 6, 10]. The Petitioner's sentencing hearing was held on May 20, 2010. At the beginning of the hearing, the Petitioner affirmed that the answers he provided during his Rule 11 colloquy were true, that he committed the offense to which he had pled guilty, and that he still wished to plead guilty according to the terms of his plea agreement. [Id., Doc. 47: Sentencing Hrg. Tr. at 5-6]. This Court then

accepted the Petitioner's guilty plea as having been knowingly and voluntarily entered.  [Id. at 6].

After this Court determined the applicable advisory Sentencing Guidelines range of imprisonment, the Petitioner's trial counsel, Kevin McCants, argued in favor of a sentence of 120 months, the mandatory minimum.  [Id. at 23].  In so arguing, Mr. McCants noted that the Petitioner did not specifically seek out a child and that his offense was "a blemish in an otherwise honorable life" that included service in the military.  [Id. at 24].  Mr. McCants further noted that Petitioner had been in school for auto body service at the time of the offense but that he had run "into . . . a problem with drugs, which had really been the only downfall in [his] life." [Id.].  Mr. McCants also informed the Court that Petitioner came from a strong family and that an appointment had been set up for the day after his offense with a drug counselor.  [Id.].  At the conclusion of Petitioner's sentencing hearing, this Court imposed a sentence of 168 months' imprisonment, which was at the low end of the Guidelines range. [Id. at 27].

The Petitioner appealed, and the Fourth Circuit affirmed this Court's judgment on July 5, 2011.  United States v. Cutter, 452 F. App'x 344 (4th Cir. 2011).  The Fourth Circuit's mandate issued on July 27, 2011.  On July 26, 2012, the Petitioner, now represented by different counsel, filed the present

motion to vacate, asserting several claims of ineffective assistance of counsel. [Doc. 1]. The Government has responded to the Petitioner's motion and seeks summary judgment as to all of the asserted claims. [Doc. 17].

## II.   FACTUAL BACKGROUND

### A.   Offense Conduct

The Petitioner's arrest and conviction arose out of an investigation conducted by the Buncombe County Sheriff's Department into the solicitation of minors for sexual activity over the internet. [See Criminal Case No. 1:09-cr-00053-MR-DLH, Doc. 33: PSR at 3]. On May 18, 2009, Detective Jeff Sluder posed as an 11-year-old female child (the "girl") in an internet chat room and began a chat conversation with the Petitioner. [Id.]. The Petitioner set the tone of the conversation, which quickly became sexual, and the "girl" indicated several times to Petitioner that "she" was 11 years old. [Id.]. The Petitioner stated that he wanted to meet to "hit that," and when the "girl" asked him to clarify that statement, he responded, "LOL, as in sex in every position imaginable, LOL." [Id.]. When the "girl" asked if it would hurt, or if she would get pregnant, the Petitioner responded that he always wore a condom. [Id.]. The Petitioner also sent pictures of himself to the "girl." [Id.]. The Petitioner then told the "girl" that he was at a hotel in Hendersonville and asked whether she could get a ride to his hotel. [Id.]. The "girl" indicated

5

that she could get a friend to bring her but suggested that they meet at the mall first, after which they agreed to meet at a music store at the Blue Ridge Mall in Hendersonville that same day. [Id.]. The Petitioner stated that he would be wearing jeans and wearing a multi-colored hoodie. [Id.].

Thereafter, Detective Sluder notified a Henderson County Sheriff's Department detective of the meeting that was to occur within the hour, and the detective made contact with the Petitioner at the music store, placing him under arrest. [Id. at 4]. The Petitioner waived his Miranda rights and admitted to being the person who engaged with a person he thought was an 11-year-old girl in a chat room. [Id.]. The Petitioner admitted that he had made "an extremely stupid decision"; when asked what he intended to do with the 11-year-old girl, the Petitioner stated that he intended to have sex with her but did not know if it would have happened. [Id.]. The Petitioner also stated that he had been staying in a local hotel room because he had met a woman from Craiglist at the hotel the evening before and had sex with her, but she had left the room earlier in the morning. [Id.].

### B.     Petitioner's Statement in Support of Motion to Vacate

In support of his motion to vacate, the Petitioner has submitted a statement, in which he explains the circumstances of his arrest and asserts the alleged deficiencies in his trial counsel's representation. According to

the Petitioner, he rented a hotel room in Hendersonville on May 17, 2009, where he met a woman he had agreed to meet, using a Craigslist message board, and had sex with her. [Doc. 1 at 15: Pet'r Statement at ¶¶ 2-8]. After the woman left around 8:00 a.m. that morning, the Petitioner entered a "Yahoo chat room-dating site," understanding that all persons who used the site were 18 years old. [Id. at ¶¶ 9-11]. The Petitioner states that he began chatting with a "woman" who eventually stated that she was 11 years old, after which he closed the messaging window and ended his conversation with her. [Id. at ¶¶ 12-13]. Thereafter, according to the Petitioner, the same person contacted him and sent him a picture of herself, clearly depicting a woman over the age of 18. [Id. at ¶ 14]. The Petitioner states that he therefore believed the person was roleplaying, and they began a sexual conversation. [Id. at ¶ 15].

The Petitioner states that at the end of their chat, he and the "woman" agreed to meet at a store in the Blue Ridge Mall in Hendersonville. [Id. at ¶ 16]. The Petitioner states that after arriving at the store, he changed his mind about meeting the woman because he had a fiancé and was feeling guilty about cheating on her again; however, as he was walking out of the store, a woman called his name. [Id. at ¶¶ 17-18]. Believing the woman to be the

person he had chatted with over the internet, the Petitioner walked toward the woman, who then handcuffed and arrested him.  [Id. at ¶¶ 19-20].

The Petitioner states that when he arrived at the police department, he was interviewed by officers and "kept trying to tell the officers that [he] didn't believed [sic] [he] was meeting someone underage," in response to which officers told him that he "wasn't in that much trouble because there wasn't an actual underage victim."  [Id. at ¶¶ 21-23].  According to the Petitioner, the officers later brought him a blank sheet of paper and told him that the parents of "the little girl involved" were at the department, that her father was upset with Petitioner, and that Petitioner should write a letter of apology.  [Id. at ¶ 24].  Stating that he "was scared and did everything the officers requested of [him]," Petitioner wrote the apology letter and consented the search of his apartment.  [Id. at ¶¶ 25-26].

The Petitioner states that after he was charged, his family hired Kevin McCants to represent him.  [Id. at ¶ 29].  According to the Petitioner, Mr. McCants told the Petitioner that his only option was to plead guilty, and Mr. McCants did not discuss any defenses to the charge with him or any other ways to challenge the government's case, such as by motions to suppress his post-arrest statements or by objecting to the chat room log summaries.  [Id. at ¶¶ 30-31].  The Petitioner states that he was not aware that his

confession was not enough to convict him and that, when he and his family asked Mr. McCants about an entrapment defense, Mr. McCants told them that entrapment could not be used as a defense in this case.  [Id. at ¶ 31]. The Petitioner states that had he known that he could assert these defenses, he would not have pleaded guilty.  [Id.].  The Petitioner also states that Mr. McCants did not permit him to read his plea agreement before he signed it and that Mr. McCants represented to him that his plea was for a sentence of no more than twelve years. [Id. at ¶ 33-34].  The Petitioner states further that had he known that he was waiving his right to appeal his sentence, he "would never have agreed to the plea agreement." [Id. at ¶ 38].  With respect to his sentencing, the Petitioner states that Mr. McCants was not prepared for the hearing, that he did not present any evidence in mitigation of Petitioner's sentence, and that neither Mr. McCants nor any representative of the Government informed this Court of the extent of Petitioner's cooperation or of his military service.  [Id. at ¶ 34].

### C.    Affidavit of Kevin McCants

In response to Petitioner's claims of ineffective assistance of counsel, the Government has submitted the affidavit of Mr. McCants.  [Doc. 18: McCants Affidavit].  Mr. McCants states in his affidavit that he has extensive experience representing individuals charged with sex crimes and has tried

over 100 cases in federal and state courts, including two high-profile sex cases in the Washington, D.C., area that were featured on MSNBC. [Id. at 2]. Addressing the Petitioner's statements related to the facts of the offense, Mr. McCants reports that "the government had a lot more evidence" than the Petitioner has suggested, including evidence that after one point during Petitioner's chat with the girl/woman, "the officer was quite explicit that it was a young girl and not a prank" but Petitioner nevertheless "raced over to the mall (leaving the do not disturb sign on the door [of his hotel room])." [Id. at 1]. Mr. McCants corroborates the Petitioner's statement that officers impersonating a young girl sent Petitioner a photograph of an "adult-looking" woman. [Id. at 2].

Mr. McCants states that he communicated frequently with the Petitioner and the Petitioner's family throughout his representation of the Petitioner. [Id. at 2, 4-5]. Mr. McCants states that he traveled from Washington, D.C. to Asheville at least five times and also to Cherokee, North Carolina, where the Petitioner was being held, at least three times. [Id. at 2]. Mr. McCants states that he outlined all possible defenses to the Petitioner and his mother and explained that Petitioner's confession would have to be corroborated by the evidence, but "early on," the Petitioner expressed that he was afraid of receiving a lot of jail time and wanted Mr. McCants "to

negotiate the best deal possible." [Id. at 2-3]. In an effort to obtain a sentence reduction, Mr. McCants set up at least one debriefing with the Government, but the Petitioner's information "was not fruitful." [Id. at 3, 4]. Addressing a possible entrapment defense, Mr. McCants states that he advised the Petitioner that entrapment was an absolute defense but that it was his opinion that the chat room conversation did not constitute entrapment. [Id. at 4]. According to Mr. McCants, he "worked a lot of hours on possible ways to win on the big issues like entrapment or actual innocence but that it was a long shot and "wasn't realistic," and the Petitioner, his mother, and his fiancé knew he would not succeed at trial. [Id.].

Mr. McCants states that he reviewed all of the Government's discovery with the Petitioner more than once, including the Petitioner's statement to the police, explaining that he "didn't travel all the way from Washington, D.C. to Asheville, N.C. to not show him the discovery and to discuss our trial options." [Id. at 3]. Mr. McCants states that his review of the Petitioner's confession with the Petitioner was what appeared to have scared the Petitioner out of going to trial, notwithstanding Mr. McCants' having told the Petitioner that he "love[d] to try cases and . . . thought he had an outside chance at trial." [Id. at 3].

Addressing specifically the Petitioner's decision to enter into a plea agreement with the Government, Mr. McCants states that the Petitioner "was never rushed to make a decision to plead guilty." [Id. at 4]. Mr. McCants states that he never told the Petitioner "that the plea was for no longer than 12 years" and that Petitioner read and they discussed "all the terms of the plea deal for multiple hours on multiple days." [Id.]. Mr. McCants further states that the Petitioner was aware that the Government's evidence of his guilt was overwhelming and that he never wanted to go to trial. [Id. at 3].

With respect to his preparation for the Petitioner's sentencing hearing, Mr. McCants states that he recalled "making every possible argument at the sentencing hearing about [Petitioner's] drug use and potential as a young man," which included informing the Court that the Petitioner had a favorable time of service in the military, a fact that was also reflected in the Petitioner's PSR. [Id. at 4]. Mr. McCants states that he never had any conversation with the prosecutor that involved concealing the Petitioner's military service and that he never told the Petitioner that he could not mention his military service to the Court. [Id. at 5]. Mr. McCants further points out that at sentencing, he argued for a lenient sentence based on the Petitioner's improper medication and drug use. [Id.].

**D. Additional Affidavits Submitted in Response to McCants Affidavit**

In response to Mr. McCants' affidavit and specifically Mr. McCants' statements regarding the entrapment issue, the Petitioner submits an additional affidavit. In this affidavit, the Petitioner asserts that Mr. McCants "never discussed possible defenses with me" [Doc. 28-1: Petitioner Affidavit at 2], and that Mr. McCants told him that he "stood 'no chance' at trial" [Id. at 3]. The Petitioner later asserts in this affidavit, however, that they did discuss the entrapment defense, as he "asked [Mr. McCants] about the issue of entrapment, trying to suppress my confession for various reasons, and bringing up the drug use and lack of sleep. I was told that none of those would be helpful or possible." [Id. at 4].

The Peitioner also offers the affidavit of his mother, who relates that Mr. McCants told her that signing the plea agreement "was really [Petitioner's] only option." [Doc. 28-2: Wentz Affidavit at 1]. When Petitioner's mother suggested going to trial and raising the defense of entrapment, Mr. McCants rejected the idea, saying he "did not want to take the chance." [Id. at 3].

## III.  STANDARD OF REVIEW

### A.  Motion to Vacate

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief.  If a petitioner's motion is not dismissed after this initial review, the Court must direct the Government to respond.  Id. The Court must then review the Government's answer and motion for summary judgment and any materials submitted by the parties to determine whether an evidentiary hearing is warranted under Rule 8(a).  Having considered the record in this matter, the Court finds it is clear that Petitioner is not entitled to relief; therefore, an evidentiary hearing is not required.  Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### B.  Motion for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991) (affirming summary judgment standard to case filed under 28 U.S.C. § 2255).  Any permissible inferences which are drawn from

the underlying facts must be viewed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  Where, however, the record taken as a whole could not lead a trier of fact to find for the non-moving party, granting summary judgment is appropriate.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

## IV.   DISCUSSION

### A.   Ineffective Assistance of Counsel Standard

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.  See U.S. CONST. amend. VI.  To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"  Sexton v. French, 163 F.3d 874,

882 (4th Cir. 1998) (quoting <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993)).

Under these circumstances, the petitioner "bears the burden of affirmatively

proving prejudice."  <u>Bowie v. Branker</u>, 512 F.3d 112, 120 (4th Cir. 2008).  If

the petitioner fails to meet this burden, a "reviewing court need not even

consider the performance prong."  <u>United States v. Rhynes</u>, 196 F.3d 207,

232 (4th Cir. 1999), <u>opinion vacated on other grounds</u>, 218 F.3d 310 (4th Cir.

2000).

Finally, to demonstrate prejudice in the context of a guilty plea, a

petitioner must be show "a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going

to trial."  <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

## B.    Petitioner's Claim that Counsel Failed to Advise Him of Available Defenses

The Petitioner first argues that counsel improperly failed to advise him

of the defense of entrapment, or of the fact that he could have challenged

the admissibility of the chat logs and his post-arrest confession at trial.  [Doc.

1: Motion to Vacate at 5].  As Mr. McCants' affidavit makes clear, however,

counsel explored all available defenses to the Petitioner and, in fact, advised

the Petitioner that there was an outside chance he could succeed at trial

asserting a defense of entrapment.  Although the Petitioner claims in his

motion that Mr. McCants did not "properly inform" him of this defense, [id.], he acknowledges in his statement that Mr. McCants *did* discuss this defense with him and had advised Petitioner of his opinion that it was not available under the facts of this case [see Doc. 1: Pet'r Statement at ¶ 31].

In order to prove the defense of entrapment, the Petitioner would have had to have shown, to a jury's satisfaction, (1) "government inducement of the crime," and (2) "a lack of predisposition on the part of the defendant to engage in the criminal conduct." United States v. Hackley, 662 F.3d 671, 681 (4th Cir. 2011) (citation omitted). According to the offense conduct as set forth in the PSR, the Petitioner initiated a chat conversation with the undercover detective posing as an 11-year-old girl. The Petitioner set the tone and topic of the chat, and the tone quickly became sexual. The "girl" indicated to the Petitioner on several occasions during the chat that "she" was eleven years old. In response, the Petitioner indicated that he wanted to meet to "hit that." When the "girl" asked for clarification as what that statement meant, the Petitioner responded, "LOL, as in sex in every position imaginable, LOL." The Petitioner then arranged to meet the "girl" at a nearby mall.

Following his arrest, the Petitioner confessed that he understood at the time that he was going to the mall to meet a girl he believed to be 11 years

old and that he went to meet her with the intent to engage in sex with her. Given this confession, Mr. McCants' advice to the Petitioner that he was unlikely to succeed on the entrapment defense was sound, and the Petitioner has not shown deficient representation in this regard.

With respect to the admissibility of the chat logs or his post-arrest confession, the Petitioner fails to explain what defenses he believed he could have successfully asserted to prevent the admission of his confession or the chat logs at trial.  Having identified no defenses likely to have resulted in his acquittal, Petitioner has not shown either deficient representation or prejudice resulting from Mr. McCants' representation.  Accordingly, the Court concludes that the Petitioner's ineffective assistance claim based on counsel's alleged failure to disclose available defenses must fail as a matter of law.

## C.    Petitioner's Claim that Counsel Was Ineffective in Advising Him to Enter into a Plea Agreement

Petitioner next argues that Mr. McCants improperly advised him to enter into a plea agreement with the Government, as "the plea agreement offered no advantage over pleading guilty without an agreement" and included an appeal waiver.  [Doc. 1: Motion to Vacate at 6].  This claim must be rejected.   The plea agreement included a provision for a possible

reduction in sentence if Petitioner were able to provide substantial assistance to the Government. Petitioner asserts in his motion that he sought to provide that assistance, a fact corroborated by Mr. McCants. Because the Petitioner sought to receive a reduction for substantial assistance, entering into the plea agreement made sense. Moreover, the Petitioner cannot demonstrate any prejudice resulting from the appeal waiver provision in the written plea agreement, as he has not identified any issue that could have succeeded on appeal. Therefore, the Court concludes that the Petitioner has failed to show either deficient representation or prejudice based on counsel's advice to enter into a plea agreement with the Government, rather than pleading straight-up to the charge.

### D. Petitioner's Claim that Counsel Was Ineffective in Failing to Advise the Court of Petitioner's Cooperation

Finally, Petitioner asserts that Mr. McCants was ineffective in failing to inform this Court during the sentencing hearing that Petitioner had cooperated with the Government. Petitioner contends that had Mr. McCants informed this Court of Petitioner's cooperation, he might have received a lower sentence. [Doc. 1: Motion to Vacate at 8].

This claim of ineffective assistance fails. First, the Petitioner cannot show that, even if Mr. McCants had argued for leniency on the basis of his

19

cooperation, this Court would have imposed a below-Guidelines sentence. As evidenced by the sentencing hearing transcript, Mr. McCants made several arguments in favor of leniency on the Petitioner's behalf, arguing that he had successfully served in the military, that he had been in school at the time of his offense, that he had strong family support, that he was not a sexual predator, and that his offense was attributable to a drug problem. Additionally, the fact that Petitioner had cooperated with law enforcement was made clear by the PSR, which this Court had reviewed and considered before imposing Petitioner's sentence. In light of Mr. McCants' numerous arguments in favor of leniency that resulted in a sentence at the low end of the Guidelines range, the Petitioner cannot show that an additional, explicit argument based on the Petitioner's cooperation would have made any difference. Further, the Petitioner has failed to show that Mr. McCants' failure to raise his cooperation, where that cooperation had not been sufficiently fruitful to merit a motion for reduction in sentence by the Government, was in any way deficient. Accordingly, the Court concludes that this claim for ineffective assistance also fails as a matter of law.

## V.    CONCLUSION

For the reasons stated herein, the Court finds that Petitioner is not entitled to relief.  The Court further finds that Petitioner has not made a

substantial showing of a denial of a constitutional right.  <u>See generally</u> 28 U.S.C. § 2253(c)(2); <u>see also</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (<u>citing</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000)).  Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right.  <u>Slack</u>, 529 U.S. at 484-85.  As a result, the Court declines to issue a certificate of appealability.  <u>See</u> Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

# O R D E R

**IT IS, THEREFORE, ORDERED** that the Government's Motion for Summary Judgment [Doc. 17] is **GRANTED**, and the Petitioner's Section 2255 Motion to Vacate, Set Aside, or Correct Sentence [Doc. 1] is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Martin Reidinger
United States District Judge